1  SEYFARTH SHAW LLP
   Kristina M. Launey (SBN 221335)
2  klauney@seyfarth.com
   Tiffany Tran Madison (SBN 294213)
3  tmadison@seyfarth.com
   Bradley D. Doucette (SBN 322611)
4  bdoucette@seyfarth.com
   400 Capitol Mall, Suite 2350
5  Sacramento, California 95814-4428
   Telephone:   (916) 448-0159
6  Facsimile:   (916) 558-4839

7  Attorneys for Defendant
   WINCO HOLDINGS, INC.
8

9                UNITED STATES DISTRICT COURT

10               EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL LEE MACRAE aka CARLEE MACRAE,<br><br>Plaintiff,<br><br>v.<br><br>WINCO HOLDINGS, INC.; and DOES 1-50, inclusive,<br><br>Defendant. | Case No.<br><br>**DEFENDANT WINCO HOLDINGS, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>Tulare County Superior Court<br>Case No. 289876<br><br>Action Filed: December 22, 2021<br>Complaint Served: January 5, 2022<br>FAC Served: January 17, 2022 |

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF CARL LEE MACRAE aka CARLEE MACRAE AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant, WINCO HOLDINGS, INC. ("Defendant" or "WinCo"), hereby files this Notice of Removal pursuant to 28 U.S.C. sections 1331, 1132(a)(1), 1441(a) and (b), and 1446, based on diversity of citizenship jurisdiction and federal question jurisdiction, to effect the removal of the above-captioned action from the Tulare County Superior Court of the State of California, to the United States District Court for the Eastern District of California, and states that removal is proper for the following reasons:

## BACKGROUND

1.     On December 22, 2021, Plaintiff CARL LEE MACRAE aka CARLEE MACRAE ("Plaintiff") filed an unverified complaint ("Complaint") entitled "*Carl Lee Macrae aka Carlee Macrae v. WinCo Holdings, Inc.; and DOES 1-50, inclusive, Defendants*," Case No. 289876 (the "State Court Action") in Tulare County Superior Court of the State of California. On January 17, 2022, Plaintiff filed a First Amended Complaint ("FAC") in the same matter.

2.     The FAC alleges causes of action for (1) gender, gender identity, and gender expression discrimination; (2) disability discrimination; (3) failure to accommodate disability; (4) failure to engage in an interactive process; (5) failure to prevent discrimination; (6) jury duty retaliation; (7) wrongful termination in violation of public policy; (8) negligent infliction of emotional distress; (9) unpaid meal periods; (10) unpaid rest periods; and (11) violation of California Business and Professions Code Section 17200.

3.     Defendant was served with the Summons and Complaint on January 5, 2022, and served with the FAC on January 17, 2022. A true and correct copy of the Complaint, papers served with the Complaint, and the FAC are attached as **Exhibit 1**.

4.     On February 4, 2022, WinCo filed an answer to Plaintiff's First Amended Complaint. A true and correct copy of the answer is attached as **Exhibit 2.**

## TIMELINESS OF REMOVAL

5.     This Notice of Removal is timely filed as it is filed less than one year from the date this

action was commenced and within thirty days of service upon Defendant. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 119 S. Ct. 1322 (1999) (thirty-day deadline to remove commences upon service of the summons and complaint).

## FEDERAL DIVERSITY OF CITIZENSHIP JURISDICTION

6. This Court has original jurisdiction of this action under 28 U.S.C. section 1332(a)(1). As set forth below, this action is removable pursuant to 28 U.S.C. section 1332(a) because the amount in controversy is in excess of seventy-five thousand dollars ($75,000), exclusive of interest and costs, and is between citizens of different states.

### A. **Plaintiff is a Citizen of California**

7. Plaintiff is, and at the institution of this civil action was, a citizen of the State of California. For diversity purposes, a natural person is a "citizen" of the state in which they are domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). A person's domicile is the place he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 29 F.3d 514, 520 (10th Cir. 1994).

8. Plaintiff is a resident and citizen of the State of California. Specifically, the FAC alleges that "Plaintiff is an adult person, and a resident of the County of Tulare, State of California." (Ex. 1, FAC ¶ 10.) Moreover, based on information Plaintiff submitted to Defendant throughout the course of Plaintiff's employment, as of her last day of employment with Defendant, Plaintiff resided at a California address. This demonstrates "an intent to remain" in California and establishes domicile in California. Neither Plaintiff nor Plaintiff's counsel has provided a different address or indicated that Plaintiff does not intend to remain domiciled in California. Plaintiff, therefore, is, and has been at all times since this action commenced, a citizen of California.

9. As such, Plaintiff resided and was domiciled in California from the date of her hiring through the filing of her FAC. Accordingly, Plaintiff is and, at all relevant times, was a citizen and

resident of the State of California.

### B. Defendant WinCo is Incorporated Under the Laws Of Idaho

10. Defendant is now, and was at the time of the filing of this action, a citizen of a State other than California within the meaning of 28 U.S.C. section 1332(c)(1).

11. Defendant is incorporated under the laws of the State of Idaho, with its principal place of business in Idaho.

12. Pursuant to 28 U.S.C. section 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *See also Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009).

13. The United States Supreme Court in *The Hertz Corp. v. Friend* held that a corporate entity's "principal place of business" for determining its citizenship is its "nerve center":

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." **And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination,** *i.e.***, the "nerve center"** ...

559 U.S. 77, 92-93 (2010) (emphasis added).

14. Defendant's principal place of business is Idaho because its "nerve center" is located in Idaho. Specifically, Defendant's corporate headquarters are located exclusively in the State of Idaho, and all of Defendant's executive and administrative functions take place in Idaho. Therefore, WinCo is a citizen of the State of Idaho pursuant to the "nerve center" test, and also a citizen of the State of Idaho pursuant to its state of incorporation. *Id.* at 92-93.

### C. Doe Defendants' Citizenship

15. Pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe defendants one through fifty, inclusive, does not deprive this Court of jurisdiction.

**AMOUNT IN CONTROVERSY**

16. Pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe defendants one through fifty, inclusive, does not deprive this Court of jurisdiction.

17. While Defendant denies any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000. *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 404 (9th Cir. 1996) ("[D]efendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount."). "The amount in controversy is 'not a prospective assessment of [a] defendant's liability.'" *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)). The jurisdictional amount may be determined from the face of the complaint. *Singer v. State Farm Mutual Automobile Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). However, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition).

18. In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees. *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mutual Benefit Health & Accident Ass'n,* 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law); *Conrad Assoc.'s v. Hartford Accident & Ind. Co.,* 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) ("amount in controversy" includes claims for general and special damages). The amount in controversy is not limited to damages incurred prior to removal, but is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if a plaintiff is victorious. *Chavez v. JPMorgan Chase & Co.* 888 F.3d 413, 414–15 (9th Cir. 2018).

### A.     <u>Alleged Loss of Earnings, Emotional Distress, and Punitive Damages</u>

19. Plaintiff seeks to recover "special damages" including "past and future loss of income, benefits." (Ex. 1, FAC, Prayer for Relief, ¶¶ 1, 2, 5, 7, 8, and 9.)

20. At the time her employment terminated, Plaintiff was a full-time employee earning $24.29 per hour for day hours and $24.94 per hour for night hours. When working, Plaintiff worked on average at least 23 day hours per week and on average at least 1 night hour per week during the last year of her employment.

21. Plaintiff claims her employment terminated on August 13, 2021, approximately 25 weeks prior to the date of this removal filing. Therefore, Plaintiff's lost wages to date are approximately **$14,590.25** [(($24.29 x 23 hours) + ($24.94 x 1 hour)) x 25 weeks)].

22. Plaintiff will likely claim lost wages for the time period from the August 13, 2021 date Plaintiff claims her employment terminated through trial. Assuming a conservative trial date of 12 months after service of the Complaint, which would be approximately 73 weeks from the date Plaintiff claims her employment terminated, Plaintiff's lost wages through trial will amount to approximately **$42,603.53** [(($24.29 x 23 hours) + ($24.94 x 1 hour)) x 73 weeks)].

23. In addition to lost wages, Plaintiff seeks to recover for general damages, including "shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress, and other damages…." (*See* Ex. 1, FAC ¶ 25, Prayer for Relief, ¶¶ 1 and 2.) She also seeks recovery of punitive damages. (*See* Ex. 1, FAC, Prayer for Relief, ¶ 10.)

24. To establish the amount in controversy, a defendant may rely on jury verdicts in cases involving similar facts. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002); *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

25. California jury verdicts in similar cases regularly exceed $75,000. *See e.g. Hadsell v. City of Baldwin Park*, Superior Court, Los Angeles County, No. BC548602 (April 2019) ($7,020,000 verdict on plaintiff's claims for gender discrimination and harassment); *Mateen-Bradford v. City of Compton*, Superior Court, Los Angeles County, No. TC026769 (June 2019) ($655,000 verdict on plaintiff's claims for retaliation and gender discrimination); *Eidson v. The Regents of the University of California*, Superior Court, Alameda County, No. RG-17-856649 (May 2019) ($325,000 verdict on plaintiff's

claims for retaliation, disability discrimination and failure to prevent harassment); *Torres v. B.E. Aerospace, Inc*, Superior Court, Los Angeles County, No. BC513171 (June 2016) ($8,516,000 verdict on plaintiff's age and gender discrimination claims in violation of public policy) (True and correct copies of this verdict information obtained from Westlaw.com are attached as **Exhibit 3**.)

### B. Attorney's Fees and Costs

26. Plaintiff also seeks to recover attorneys' fees and costs, including expert witness fees. (Ex. 1, FAC, Prayer for Relief, ¶ 11.) Requests for attorney's fees and costs must be considered in ascertaining the amount in controversy. *See Galt, supra*, 142 F.3d at 1156 (claims for statutory attorney's fees to be included in amount in controversy, regardless of whether award is discretionary or mandatory).

27. Plaintiff, if successful, would be entitled to an award of attorneys' fees and costs that itself "more likely than not" would exceed $75,000. Verdicts show that attorneys' fees in employment cases typically exceed $75,000. *See e.g. Monterroso v. Hydraulics Int'l Inc.*, No. B299946, 2022 WL 33250 (Cal. Ct. App. Jan. 4, 2022) ($625,000 in attorney's fees awarded to plaintiff affirmed in wrongful termination matter); *Herron v. County of Los Angeles*, Cal. Second Appellate District, Division Seven, No. B295184 (December 2021) ($320,000 in attorney's fees awarded to plaintiff affirmed in disability discrimination lawsuit); *Ojeda v. Azulay, et al.*, Cal. Second Appellate District, Division Three, No. B302440 (February 2021) ($83,555 in attorney's fees awarded to plaintiff in employment lawsuit alleging failure to pay wages); *Do v. Raytheon Co.*, Cal. Second Appellate District, Division Four, No. B293950 (October 2020) ($695,000 attorney's fees award to plaintiff affirmed in discrimination and harassment lawsuit) (True and correct copies of the *Monterroso, Herron*, *Ojeda*, and *Do* verdict information are attached as **Exhibit 4**.)

28. For each of the foregoing reasons, while Defendant denies any liability as to Plaintiff's claims, it is now "more likely than not" that the amount in controversy exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. section 1332(a).

### FEDERAL QUESTION JURISDICTION

29. This action is one over which this Court has original jurisdiction under 28 U.S.C. section 1331 and may be removed by Defendant pursuant to 28 U.S.C. section 1441 in that it is a civil action

over which the district courts have original jurisdiction founded on claims arising under the laws of the United States.

30. Federal courts have original jurisdiction over claims arising under section 301 ("Section 301") of the Labor Management Relations Act (the "LMRA"), codified at 29 U.S.C. section 185 *et seq*. Under the LMRA, the district courts of the United States shall have original jurisdiction over any action involving the application of a collective bargaining agreement. 29 U.S.C. § 185(a).

31. Section 301 confers federal jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C . § 185 (a). A collective bargaining agreement is such a contract, and Section 301 preempts all state-law claims "founded directly on rights created by collective bargaining agreements ...." *Caterpillar, Inc. v, Williams*, 482 U.S. 386, 394 (1987).

32. State-law claims which require interpretation, analysis, and application of collective bargaining agreements are preempted by the LMRA. *See, e.g., Adkins v. Mireles*, 526 F.3d 531, 540-42 (9th Cir. 2008) (holding that claims for breach of the implied covenant of good faith and fair dealing, breach of contract, fraud, intentional infliction of emotional distress, and RICO, 18 U.S.C. section 1961 *et seq*., were preempted by the LMRA because resolution of these claims would require an interpretation of the collective bargaining agreement); *Firestone v. S. Cal. Gas Co*., 219 F.3d 1063, 1066-67 (9th Cir. 2000) ("[because the collective bargaining agreement must be interpreted to determine whether the [employees' compensation agreement] provides for premium wage rates for overtime work and, therefore, whether California's overtime exemption provision applies ... Plaintiffs' state law claim is preempted by the LMRA."); *Perugini v. Safeway Stores, Inc*., 935 F.2d 1083, 1087 (9th Cir. 1991) (holding that the employee's disability discrimination claim was preempted by the LMRA); *Guinan v. Dean Foods of Cal., Inc.*, 16 Fed. Appx. 627, 629 (9th Cir. 2001) (holding that claim for unpaid wages for off-the-clock work in violation of the California Labor Code was preempted by the LMRA because to determine what work was compensable required interpretation of the collective bargaining agreement).

33. It is immaterial that Plaintiff avoided explicit reference to the applicable collective bargaining agreement in her operative pleading. Section 301 preempts all state-law claims arising under

7

DEFENDANT'S NOTICE OF REMOVAL

78798114v.1

a collective bargaining agreement—regardless of the pleading—if the claims actually depend on rights conferred by the collective bargaining agreement or require interpretation of a collective bargaining agreement. *See Williams*, 482 U.S. at 393-94 (explaining that complete preemption occurs where the "pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule') (citations omitted). *Accord Audette v. Intl Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1113 (9th Cir. 1999) (civil rights claim preempted where interpretation of agreement was required in evaluating employer's defense that it had a legitimate non-business reason for its actions); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) ("The district court ... properly looked beyond the face of the complaint to determine whether the contract claim was in fact a section 301 claim for breach of a collective bargaining agreement 'artfully pleaded' to avoid federal jurisdiction."); *see also Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) (noting that Section 301 is one of "only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction.").

34. As the United States Supreme Court explained in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985):

> [W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law.

*Id*. (citations omitted).

35. Thus, any state-law claim where a defendant alleges resolution is substantially dependent upon the court's analysis of the terms of an agreement made between the parties in a labor contract may be removed. *See, e.g., Metropolitan Lire, Ins. Co. v. Taylor,* 481 U.S. 58, 63-64 (1987); *Newberry v. Pacific Racing Association*, 854 F.2d 1142, 1146 (9th Cir. 1988) ("The preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement ... and any state claim whose outcome depends on analysis of the terms of the agreement"); *Hyles v. Mensing*, 849 F.2d 1213, 1215 (9th Cir. 1988) (affirming removal and dismissal of the plaintiff's state-law claims pursuant to LMRA preemption); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997-98 (9th Cir. 1987) (Section 301 preemption supplants state claim with federal claim);

*Greenly v. Sara Lee Corp.*, 2008 WL 192925230, at *21 (E.D. Cal. 2008) ("The United States Supreme Court has articulated that 'where the right [at issue in the lawsuit] is created by state law [but the application of state law] requires the interpretation of a collective bargaining agreement,'" state-law claims are preempted by Section 301).

36. Here, this Court has original federal question jurisdiction because resolution of Plaintiff's claims is substantially dependent upon the court's analysis of the terms of a collective bargaining agreement. Plaintiff's employment with Defendant was governed by the "Hourly Employee Working Conditions & Wages Agreement" (the "Employee Agreement") made between the parties in a labor contract and entered into by the WinCo Foods #61 Hourly Employee Association of which Plaintiff, as an employee at Store #61 in Visalia, California, was a member. The Employee Agreement became effective on September 23, 2019, was ratified on December 18, 2019, and expressly provides the terms and conditions of Plaintiff's employment.

37. Plaintiff's claims will require the Court's analysis of the terms of the Employee Agreement. For example, Plaintiff alleges claims of failure to provide meal periods and rest breaks. (Ex. 1, FAC, ¶¶ 95-114.) Resolving those claims will require the Court to interpret Section H of the Employee Agreement, concerning meal and rest breaks.

38. Likewise, whether or not Plaintiff was provided breaks that she missed is a preliminary question that will require the Court to interpret both the Employee Agreement and employer meal and rest break obligations in light of *Brinker v. Superior Court*, 53 Cal. 4th 1004 (2002) and California law distinguishing the employer obligation to "provide" breaks from a non-duty to "require" breaks.

39. Given Plaintiff's meal and rest break allegations arising from work governed by the Employee Agreement, Plaintiff's claims require this Court to interpret, analyze, and apply the excerpted provisions in the Employee Agreement and the terms and provisions of the Employee Agreement generally. Thus, Plaintiff's claims raise a substantial federal question.

40. Again, Plaintiff's failure to reference the Employee Agreement within the FAC does not preclude federal question jurisdiction as the claims are precluded by the "well-pleaded complaint" rule. As reiterated by the Ninth Circuit in *Hall v. North American Van Lines, Inc*., 476 F.3d 683, 687 (9th Cir. 2007):

> The absence of a federal claim on the face of [the plaintiff's] complaint does not end our jurisdictional inquiry. Although we usually defer to the plaintiff's choice to plead state law claims, there exist 'a handful of extraordinary situations where even a well-pleaded state law complaint will be deemed to arise under federal law for jurisdictional purposes ... Under the 'artful pleading' doctrine, a well-pleaded state law claim presents a federal question when a federal statute has completely preempted-that particular area of law ... ." [A]ny claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Id*. at 687 (quoting *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993) and *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000); *see also Busey v. P. W. Supermarkets, Inc.*, 368 F. Supp. 2d 1045, 1048, 1053-55 (N.D. Cal. 2005) ("By careful pleading, a plaintiff cannot avoid federal preemption. Federal courts accordingly must recharacterize complaints which omit federal law essential to a claim, or which cast in state law terms a claim that can be made only under federal law").

41. Accordingly, this Court has original jurisdiction over Plaintiff's FAC pursuant to 29 U.S.C. section 185. Plaintiff's action, though it purports to raise only state-law claims, is necessarily federal in character. Plaintiff's action, therefore, "arise[s] under the ... laws ... of the United States," (28 U.S.C. section 1331), and is removable to this Federal Court pursuant to 28 U.S.C. section 1441(b).

### **VENUE**

42. Venue lies in the Eastern District of California pursuant to 28 U.S.C. sections 1441(a), 1446(a), and 84(c). This action originally was brought in Tulare County Superior Court of the State of California, which is located within the Eastern District of California.

### **NOTICE OF REMOVAL**

43. Pursuant to 28 U.S.C. section 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk in the State Court Action. This Notice of Removal also will be served on counsel for Plaintiff, and a copy of the Proof of Service will be filed shortly after these papers are filed and served.

///

///

///

## PRAYER FOR REMOVAL

44.   WHEREFORE, Defendant prays that the State Court Action be removed to the United States District Court for the Eastern District of California.

DATED: February 4, 2022                              SEYFARTH SHAW LLP


By: /s/ Bradley D. Doucette
　　　Kristina M. Launey
　　　Tiffany Tran Madison
　　　Bradley D. Doucette

Attorneys for Defendant
WINCO HOLDINGS, INC..